UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


RONALD ZUESKI,

        Plaintiff,                         Case No.  07-10245

v.                                  District Judge Denise Page Hood
                                           Magistrate Judge R.  Steven Whalen

MICHIGAN STATE POLICE, et al.,

        Defendant.

_____/


**REPORT AND RECOMMENDATION**

Before this Court are *Motion for Summary Judgment* by the Taylor Police Department

and Taylor Police Department Officers Gina Masterson, Keith O'Conner, Anthony Neal,

Nicolas Hill, Michael Neidy and Sergeant Timothy Culp[1] [Docket #66]; *Motion for Summary*

*Judgment* by the Woodhaven Police Department and Woodhaven Police Officer Timothy

Ames[2]  [Docket #67]; and *Motion for Summary Judgment*  by Michigan State Police

---

[1]On July 23, 2008, the City of Taylor filed a motion for summary judgment, to which Plaintiff has not yet responded.  *Docket #134.*  Accordingly, municipal claims against the City of Taylor are not addressed here.

[2]The City of Woodhaven, substituted as a real party of interest for the Woodhaven Police Department on June 6, 2008, argues in the present motion that municipal claims should be dismissed. *Docket #67.*  As such, those claims are discussed here.  Defendant-Counter claimant City of Woodhaven also requests summary judgment on its counter-claim for property damages to three Woodhaven Police vehicles.  *Docket #67.*

Troopers Dennis McCarthy and Robert Prause  [Docket #69 and #78][3], which have been referred for a Report and Recommendation pursuant  to 28 U.S.C. § 636(b)(1)(B).

For the reasons set forth below, I recommend the following: 1). Defendants Gina Masterson, Keith O'Conner, Anthony Neal, Nicolas Hill, Timothy Culp, and Michael Neidy's motion for summary judgment [Docket #66] should be GRANTED.  2). Timothy Ames and Woodhaven Police Department's motion for summary judgment should be GRANTED.  3). The City of Woodhaven's counter-claim for $10,333.21 should be GRANTED [Docket #67].  4). Dennis McCarthy and Robert Prause's motion for summary judgment [Docket #69] should be GRANTED.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, a Michigan Department of Corrections inmate, filed the instant action on January 16, 2007, alleging civil rights violations involving his arrest following a high speed police chase.  On February 21, 2005, Defendant O'Connor, a Taylor Police Department officer, was dispatched to the home of Plaintiff's father, following a report by the father that Plaintiff had stolen money for drugs from the father's pocket despite the father's attempt to fend off Plaintiff by hitting him over the head with his cane.  *Docket #66*, Exhibit B; *Docket #67*, Exhibit 1.  Plaintiff's  father reported that Plaintiff then stole his red Ford Taurus.  *Id.* Later the same morning at 6:44 a.m., the Taylor Police Department received a call from a

_____

[3]Docket #78, is a duplicate of #69, apparently filed in error by the Clerks Office. The two docket numbers will be addressed together.

store clerk at "Get-N-Go," reporting that the convenience store had been robbed. *Defendant's Brief, Docket #66* at 3. Store clerk Mary Jo Guffey "provided a description of Plaintiff" as well as the car Plaintiff had stolen from his father. *Id.* At 9:18 a.m., Defendant Taylor Police Officer Neidy, on duty, observed Plaintiff inside the stolen car, parked at the Princeton Square Apartments. *Id.* Defendant Neidy dispatched the Taylor Police Department, also activating his emergency equipment. *Id.* Plaintiff attempted to evade arrest by driving his car across a lawn. *Id.* In response to the dispatch, several Taylor Police Department officers arrived on the scene. *Id.* Defendant O'Connor attempted to block the exit of the complex. *Id.* Defendant Neidy again located Plaintiff, now backed into a parking spot. *Id.* Plaintiff pulled out with Defendant Neidy (emergency equipment activated) in pursuit. *Id.* In the meantime, Defendant Officer Gina Masterson, also with emergency equipment activated, attempted to block Plaintiff's exit from the complex. *Id.* Plaintiff, driving directly toward Defendant Masterson's vehicle, swerved just before hitting the vehicle, instead driving over a curb and through a lawn. *Id.* Plaintiff also swerved at Defendant Officer Anthony Neal's vehicle (its emergency equipment activated) before leaving the complex. *Id.* Defendant Neal and non-defendant Officer Melissa Caldwell gave chase as Plaintiff "continued to run red lights" at approximately 85 miles per hour. *Id.* Plaintiff, later admitting that he had been smoking crack prior to being observed by Defendant Neidy, continued to smoke crack during the pursuit. *Id.* at 4 (*citing* Exhibit A at pgs. 62-64, 77-82, 87-88). Plaintiff drove to I-75 and Fort Street, continuing into Wyandotte, at which time he threw a small plastic bag out of the car window. *Id.* The chase

continued northbound "through red lights at Southfield, Outer Drive, and Schaeffer Roads." *Id*. Defendant Sergeant Timothy Culp of the Taylor Police Department called off the chase by his department when Plaintiff reached Jefferson Avenue. *Id*. (*citing* Exhibits C-E). Detroit Police officers later picked up the chase, joined by Michigan State Police Officers Defendants Prause and McCarthy as Plaintiff, still fleeing, entered southbound I-75, now heading toward Taylor. *Id.* Defendant Taylor Police Officers Culp, Neal, and Hill attempted to create a road block, stopping traffic at southbound I-75 and Allen Road. *Id.* Upon approaching the roadblock, Plaintiff drove onto the right shoulder of the expressway, "directly at Defendant Hill," then drove "directly at Defendant Neal," both of whom dodged to avoid being struck. *Id.* Plaintiff then struck Defendant Culp's vehicle, parked on left shoulder. *Id.* Plaintiff, having successfully maneuvered the road block, continued to smoke crack while driving at speeds of up to 100 miles per hour while being pursued by Defendant Michigan State Police Officers Prause and McCarthy. *Id.* As Plaintiff continued southbound on I-75, the Woodhaven Police Department joined the pursuit. *Id.* Plaintiff, still giving chase, struck Defendant Woodhaven Police Officer Timothy Ames' vehicle. *Id*.at 5 (*citing* Exhibit G). Defendant Prause, calculating the relative risks of either continuing the high speed chase in apparently adverse weather conditions or forcing the Taurus off the road, "pushed the rear of Plaintiff's vehicle," causing Plaintiff to lose control of the Taurus and slam into a semi-truck. Plaintiff was ordered out of his car by Defendants McCarthy and Prause. *Id.* Plaintiff was then removed from the car. *Id*. (*citing* Exhibit G).

Plaintiff's and Defendants' version of events differ from this point forward. Plaintiff alleges that "[a]s police approached my [vehicle] I had my hands in the air, in full view, and was in total surrender," but was nonetheless struck in the head repeatedly by police with with a police issue pistol, resulting in injuries "requiring immediate medical attention." *Complaint* at 4. Plaintiff alleges further that he was denied immediate treatment "even after the Woodlhaven EMS informed him that he required "stitches and x-rays." *Id.* He alleges further that while being held in the Taylor jail, medical treaters forced him "to sign a paper" stating that he had refused treatment. *Id.* Plaintiff contends that he finally received treatment three days later after the Wayne County Jail "refused to take custody" of him until he "was medically cleared," at which time he was taken to Heritage Hospital where personnel informed him that he should have received "stitches days ago." *Id.* He attributes Taylor Jail's failure to obtain prompt medical treatment to an attempt to "cover up the brutal [assault]" at the time of his arrest. *Id.*

Conversely, Defendants contend that Plaintiff sustained a head injury in the course of hitting various police vehicles during the chase, being rammed into the semi truck by the State Police Troopers attempting to end the multi-city police chase, and/or by his father striking him with a cane the same morning. Defendants contend further that Plaintiff received appropriate treatment by EMS personnel at the scene of the arrest. *Docket #66* at 5. Taylor Police Department Defendants Masterson, O'Conner, Neal, Hill, Culp, Neidy, and Defendant Woodhaven Police Officer Ames all deny being present at the time of the arrest.

Defendants Prause and McCarthy, present at Plaintiff's arrest, deny either participating in or witnessing the use of excessive force. *Docket #69* at 2.

On October 10, 2007, this Court granted Defendant Woodhaven Police Department's motion for leave to file a counterclaim for damages to its police vehicles. *Docket #56.* On November 29, 2007, Defendants Taylor Police Department, Masterson, O'Conner, Neal, Hill, Culp, and Neidy were also granted leave to file a counterclaim. *Docket #65.*

On February 26, 2008, the Honorable Denise Page Hood dismissed Defendant Michigan State Police on the basis of Eleventh Amendment immunity. *Docket #95.* On June 6, 2008, Judge Hood allowed Plaintiff to substitute the City of Taylor and the City of Woodhaven as real parties in interest for the originally named parties of the Taylor and Woodhaven police departments. *Docket #122.*

## II. STANDARD OF REVIEW

Fed.R.Civ.P. 12(b)(6) provides for dismissal of a complaint "for failure of the pleading to state a claim upon which relief can be granted." Rule 12(b) also provides that if, on consideration of a motion under paragraph (6), "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 (summary judgment)." In assessing a Rule 12(b)(6) motion, the court accepts the plaintiff's factual allegations as true, and asks whether, as a matter of law, the plaintiff is entitled to legal relief. *Rippy v. Hattaway,* 270 F.3d 416, 419 (6th Cir. 2001).

In *Bell Atlantic Corp. V. Twombley*,—U.S.—, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the Supreme Court set forth what a plaintiff must plead in order to survive a Rule 12(b)(6) motion. The Court held that although a complaint need not contain detailed factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level...on the assumption that all the allegations in the complaint are true." *Id.*, 127 S.Ct. at 1964-65 (internal citations and quotation marks omitted). Further, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (Internal citations and quotation marks omitted). *See also Association of Cleveland Fire Fighters v. City of Cleveland, Ohio* 502 F.3d 545, 548 (6th Cir. 2007). Stated differently, a complaint must "state a claim to relief that is *plausible* on its face." *Bell Atlantic*, at 1974 (emphasis added).

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it

is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

Once the moving party in a summary judgment motion identifies portions of the record which demonstrate the absence of a genuine dispute over material facts, the opposing party may not then "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact," but must make an affirmative evidentiary showing to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). The non-moving party must identify specific facts in affidavits, depositions or other factual material showing "evidence on which the jury could *reasonably* find for the plaintiff." *Anderson*, 477 U.S. at 252 (emphasis added). If, after sufficient opportunity for discovery, the non-moving party cannot meet that burden, summary judgment is clearly proper. *Celotex Corp.*, 477 U.S. at 322-23.

## III. ANALYSIS

### A. Applicable Law

#### 1. Excessive Force

A claim of excessive force brought by a free individual, such as Plaintiff was at the time of his arrest, is analyzed under the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 394-95, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). In scrutinizing a claim of excessive force, the constitutional standard is the Fourth Amendment's requirement of reasonableness. *Graham v. Connor, supra*. That standard is objective, and is applied without reference to the officer's subjective motivations. *Id*. In *Gaddis v. Redford Township*, 364 F.3d 763,772 (6th Cir. 2004), the Court set forth the following factors to be considered:

> "Courts must apply an objective standard, looking to 'the facts and circumstances of each particular case, including [1] the severity of the crime at issue, [2]whether the suspect pose[d] an immediate threat to the safety of the officers or others, and [3] whether he was actively resisting arrest or attempting to evade arrest by flight.' *Russo v. City of Cincinnati*, 953 F.2d 1036, 1044 (6th Cir. 1992) (quoting *Graham*, 490 U.S. at 396, 109 S.Ct. 1865) (brackets added)."

This is a non-exhaustive list, and the "'proper application' of the reasonableness inquiry 'requires careful attention to the facts and circumstances of each particular case....'" *St. John v. Hickey*, 411 F.3d 762, 771 (6th Cir. 2005), quoting *Graham*, 490 U.S. at 396. The standard "contains a built-in measure of deference to the officer's on-the-spot judgment about the level of force necessary in light of the circumstances of the particular case." *Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002). A court must recognize that "police

officers are often forced to make split-second judgments–in circumstances that are tense, uncertain, and rapidly evolving–about the amount of force that is necessary in a particular situation." *Graham* at 397.

### 2. Deliberate Indifference

Pretrial detainees have a constitutional right to medical care. *Roberts v. City of Troy,* 773 F.2d 720, 723 (6th Cir. 1985). Although pretrial detainees' rights are analyzed under the Fourteenth Amendment's Due Process Clause, they are completely analogous to the Eighth Amendment rights of prisoners, *Barber v. City of Salem, Ohio,* 953 F.2d 232, 235 (6th Cir. 1992), in order "to avoid the anomaly of extending greater constitutional protection to a convict than to one awaiting trial." *Roberts,* 773 F.2d at 723. Hence, pretrial detainees have a Due Process right to receive medical care, which can be analyzed under an Eight Amendment paradigm. *Rich v. City of Mayfield Heights,* 955 F.2d 1092, 1096 (6th Cir. 1992).

Under the Eighth and Fourteenth Amendments, prison and jail officials may not act with deliberate indifference to the medical needs of their prisoners. *Estelle v. Gamble,* 429 U.S. 97, 103-104; 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). A deliberate indifference claim has two components, one objective and the other subjective. *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Comstock v. McCrary,* 273 F.3d 693, 702 (6th Cir. 2001). Under the objective component, "the plaintiff must allege that the medical need at issue is 'sufficiently serious.'" *Id.* Under the subjective component, "the plaintiff must

allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Id.*

Deliberate indifference to medical needs may be established by showing an interruption of a  prescribed plan of treatment, or a delay in medical treatment.  *Estelle v. Gamble, supra; Caldwell v. Moore*, 968 F.2d 595, 602 (6th Cir. 1992).  However, "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."  *Westlake v. Lucas*, 537 F.2d 857, 860, n.5 (6th cir. 1976).  *See also Sanderfer v. Nichols*, 62 F.3d 151, 154 (6th Cir. 1999), citing *Estelle v. Gamble, supra*, 97 S.Ct. at 292 ("Deliberate indifference, however, does not include negligence in diagnosing a medical condition").

### B.  Individual Defendants

### 1.  Defendants Masterson, O'Conner, Neal, Hill, Culp, and Neidy

Taylor Police Department Defendants Masterson, O'Conner, Neal, Hill, Culp, and Neidy argue for dismissal on the basis that none of them was present at the time of Plaintiff's arrest and alleged beating, contending further that Plaintiff never requested medical treatment from them.  *Docket #66* at 8, Exhibit E, Affidavit of Officer Gina Masterson at ¶¶11-15; Affidavit of Officer Keith O'Connor at ¶¶13, 15; Affidavit of Officer Anthony Neal at ¶¶39, 42; Affidavit of Officer Nicolas Hill at ¶¶4,7; Affidavit of Sergeant Timothy Culp at ¶¶13,

15;  Affidavit of Michael Neidy at ¶¶13, 15.

### a. Excessive Force

These Defendants' sworn statements that they were not present at the arrest is corroborated by an investigator's report and an incident report Defendant Culp made approximately three hours after the arrest.  *Id*. at Exhibits B, C.  Moreover, neither arrest reports by the Michigan State Police nor Woodhaven Police Department personnel mention Defendant Taylor Police Officers as participating in the arrest or even being present at the time of the arrest. *Id.* at Exhibits F, G.

In response, Plaintiff contends that at least one female Taylor Police Officer took part in his beating, testifying that he heard a female voice stating that Plaintiff "hit my police car." *Docket #114* at ¶33.   He notes that at the beginning of the chase at the Princeton Square Apartments, he "accidently and gently bumped" Defendant Masterson's police vehicle. *Id.* at ¶29.  Plaintiff states further that non-defendant Officer Melissa Caldwell and Defendant Masterson "could pass as sisters" contending that while he believed that one of them participated in his beating, he was not sure which one.  *Id*. at ¶29.   In support of the allegation that one of the two woman beat him, Plaintiff alleges that a Taylor Police vehicle pulled alongside him as he was traveling southbound on I-75 and that Caldwell, sitting in the passenger seat, wore a "mean look on [her] face[]." *Id.*

Plaintiff's statement that he heard a female voice at the time of the alleged beating and that Officer Caldwell ( a non-defendant) was wearing a "mean look" at some point during

the chase is insufficient to overcome   Defendants' sworn statements and other  evidence showing that they did not pursue Plaintiff after he broke through the Taylor Police Department road block set up north of his eventual arrest in Woodhaven.  More obviously, Plaintiff conceded in deposition that he sued the individual Defendant Taylor Police personnel in question only after seeing their names on a presentence investigation report.  *Id.*, Exhibit A at pg. 132.   Plaintiff, allowing for the possibility that "when I hypnotize myself later . . . it'll regress back to it," admitted that he could not recall seeing any members of the Taylor Police Force at the time of his arrest.[4]  *Id.*, Exhibit A at pgs. 136, 145, 146, 147-149.

### b.  Deliberate Indifference

Plaintiff's claim that the above Defendants refused to provide medical treatment at either the scene of his arrest or during his three-day stay at the Taylor jail is also dismissible.  First, Defendants have shown beyond a question of fact that they were not present at the Plaintiff's arrest.  Moreover, although Plaintiff claims that he requested, but did not receive medical care during his incarceration at the Taylor jail, he concedes that he does not know whether he requested care from any of the Taylor Police Force Defendants.[5]  *Id.*, Exhibit A at pgs. 142, 145, 146, 148.  All Defendants have issued Affidavits denying that they refused

---

[4]Defendant O'Connor states that he and Melissa Caldwell transported Plaintiff to the Taylor Police Department following an examination "by paramedics from Woodhaven Fire Department."  *Docket #66*, Exhibit E, Affidavit of Officer Keith O'Connor at ¶18.

[5]Plaintiff testified that Defendant Masterson took him to the hospital on the second day following his arrest.  *Docket #66*, Exhibit A at pgs. 134-135.

Plaintiff medical treatment, stating further that Plaintiff did not ask them for treatment. *Docket #66* at 8, Exhibit E.

Accordingly, all claims against Defendants Masterson, O'Conner, Neal, Hill, Culp and Neady should be dismissed.

### 2. Defendant Timothy Ames

Plaintiff's claim that Defendant Woodhaven Police Officer Timothy Ames used excessive force and/or was deliberately indifferent to his medical needs is contradicted by Defendant Ames affidavit stating that after his vehicle was sideswiped by Plaintiff during the southbound chase on I-75, he "reported the incident to dispatch at the Woodhaven Police Department and was advised to return to the station," then proceeding to the Woodhaven Police Department. *Docket #67*, Exhibit 3 at ¶¶6-7. Defendant Ames states further that on his way to the Police Department, dispatch informed him that Plaintiff had "lost control of his vehicle and struck two other Woodhaven police cruisers," directing him to the scene of the accident. *Id.* at ¶7. He states further that "at the time that he returned to the scene, Plaintiff [] had already been arrested and was in the rear seat of a different Woodhaven police cruiser." *Id.* at ¶8. Defendant Ames denies any role in the arrest, stating further that at no time did Plaintiff request medical attention from him. *Id.* at ¶¶9-11. In addition, he notes that Plaintiff acknowledged at his August 8, 2007 deposition that he could not state with certainty whether Ames was involved in his arrest. *Docket #67* at 8 (*citing* Plaintiff's August 8, 2007 Deposition at 125-126). Neither Woodhaven nor State Police incident reports state

that Defendant Ames was present during the arrest. Plaintiff's failure to present any evidence contradicting Defendant Ames statement and other abundant evidence showing that he was not present during the arrest mandates dismissal of this claim.[6]

### 3. Defendants Prause and McCarthy

Claims against Defendants Michigan State Police Troopers Robert Prause and Dennis McCarthy should also be dismissed. Defendant Prause's incident report, created the day of the arrest, states that despite the fact that he activated emergency equipment during the course of the pursuit, Plaintiff gave chase at speeds in excess of 90 miles per hour. *Docket #69*, Exhibit 1. Defendant Prause then witnessed Plaintiff's attempt to hit Taylor Police Officers involved in creating a roadblock before continuing southbound, hitting Defendant Ames' vehicle, and increasing his speed to approximately 100 miles per hour. *Id.* Prause, stating that he feared "that [Plaintiff] may intentionally kill or intentionally injure an innocent citizen," "felt the only logical option was to strike the rear of the suspect vehicle." *Id.* Prause then rammed Plaintiff's vehicle, causing him to strike the rear of a semi and drive into a ditch. *Id.* According to the report, Plaintiff then regained control of his vehicle, driving across the roadway and striking two Woodhaven Police Department vehicles before getting

---

[6]

Defendant Ames also requests dismissal on the basis of qualified immunity. Because there was no violation of Plaintiff's constitutional rights, he is also entitled to summary judgment on this basis. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); *Higgason v. Stephens*, 288 F.3d 868, 876-877 (6th Cir. 2002). Under *Saucier*, the threshold question is whether a constitutional violation occurred. If it did not, a state officer acting in the course of his official duties is protected by qualified immunity.

stuck in the mud.  *Id.*  Prause states that upon Plaintiff's refusal to exit the vehicle, he was

extracted by non-defendant Woodhaven Police Officers.  Defendant Prause's response to

Plaintiff's Interrogatories states that neither he nor any other officers struck Plaintiff at the

time of the arrest.  *Docket #69*, Exhibit 2 at ¶6.[7]   Likewise, Defendant McCarthy denies

beating Plaintiff or witnessing an assault by other officers.  *Id.*, Exhibit 3 at ¶6.

Plaintiff counters that Defendant Prause's account that he was extracted from the

Taurus by a member of the Woodhaven Police Department (Docket #69, Exhibit 1 at 4) is

contradicted by non-defendant Woodhaven Police Officer Smith's statement that Plaintiff

"was removed from the vehicle" by Michigan State Police Troopers before being handcuffed

and searched by Woodlawn Police Officers (*Id.*, Exhibit 1 at 11).  *Docket #114* at 19 of 50.

However, these inconsistencies are not material to the question of whether Defendants Prause

and McCarthy used excessive force during the course of Plaintiff's arrest.  Defendant

Prause's account states as follows:

> "McCarthy and I exited our patrol units and order (sic) the suspect out of the
> vehicle.  He refused to exit the vehicle and was extracted out of the vehicle by
> Ofc. Dewesse/Smith, Woodhaven P.D.  He was handcuffed behind his back,
> tension checked and doubled locked by Woodhaven P.D."

*Docket #69*, Exhibit 1 at 4.  Smith's report states that

> "[o]nce the suspect (later identified as Ronald Zueski) came to rest in the mud
> on the left hand side of the exit ramp, he was removed from the vehicle by

---

[7]Defendant filed an errata sheet on February 26, 2008, noting that the interrogatory
contained in Exhibit 2 was not notarized, submitting a  notarized, but otherwise identical
copy.  *Docket #92*.

MPS troopers.  R/O hand cuffed (TC/DL) the suspect at the driver side door
area.  Zueski was then searched and placed in the rear of WHPD patrol unit
12-10.)

*Id.* at 11.    Defendant Prause's account of the arrest does not create a question of fact

sufficient to survive summary judgment. Smith and Prause's reports differ as to which

individuals actually "extracted" Plaintiff from the vehicle, but agree  that the Michigan State

Police Troopers and Woodhaven Officers worked in tandem to facilitate the arrest.  More

importantly, non-defendant Woodhaven Police Officer Deweese filed a report stating that it

was he who "reached in and unbuckled [Plaintiff's] seatbelt and pulled him from the

vehicle,"  confirming Defendant Prause's account that he did not remove Plaintiff from the

his car. *Docket #114* at 45 of 50.  Moreover, the question of who removed Plaintiff from the

car is mooted by Plaintiff's acknowledgment that he was first assaulted *after* being removed

from the vehicle.   *Docket #114* at 4 of 50.

Plaintiff's allegation that Defendants used excessive force in arresting him, cannot

survive the present motion for summary judgment.   Plaintiff's claim that after being beaten

on the head that he was thrown to the ground, kicked, kneed, and punched by Taylor,

Woodhaven, and State Police Defendants before being thrown into the back of a Woodhaven

police vehicle stands directly at odds with EMS accounts, police reports, and sworn

statements by all individual Defendants.

As discussed above, although Plaintiff alleges that various Defendant Taylor and

Woodhaven Police Officers participated in his beating, all other evidence submitted places

them away from the scene of the arrest. Plaintiff's account of the arrest is further undermined by his testimony that he managed to smoke three rocks of crack during the course of the 90-100 mile per hour chase leading up to his arrest, conceding that he did not intend to stop until he had finished the third rock. *Docket #66*, Exhibit A at pgs. 87-89. Plaintiff also admitted that he was not only high, but "paranoid" during the course of the chase. *Id.* at pg. 83. To say the least, his perception of events may have been somewhat distorted.

Again, in an excessive force analysis, a court must look at the totality of the circumstances. *St. John v. Hickey, supra.* In a summary judgment motion, the Plaintiff has the burden of proffering "evidence on which the jury could *reasonably* find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252 (emphasis added). A mere scintilla will not suffice. *Hopson v. DaimlerChrysler Corp.,* 306 F.3d 427, 432 (6th Cir.2002). In this case, taking the record as a whole, *Simmons-Harris v. Zelman, supra*, no reasonable trier of fact could find in favor of the Plaintiff on his excessive force claims. Indeed, the time for a reasonable jury to find no cause of action in this case would likely be counted in minutes, not hours.

Plaintiff's deliberate indifference claims are likewise refuted by an abundance of evidence. Smith's report states further that immediately following his arrest, Plaintiff "was evaluated for any injuries at the scene by Monroe Co. Rescue. [Plaintiff] stated he did not need to be treated." *Docket #69*, Exhibit 1 at 11-12. This account is supported by Plaintiff's

acknowledgment that he was bandaged at the scene of the arrest. *Docket #66,* Exhibit A at pg. 130. Likewise, another EMS examination conducted shortly after the arrest indicates that Plaintiff exhibited "several cuts on the top of his head," but did not exhibit or complain of injuries as a result of a police assault, instead reporting that he had "a minor headache." *Docket #67*, Exhibit 2. Plaintiff's claim that he sustained a full-body assault at the time of his arrest is completely unsupported by any of his medical evaluations - none of the submitted evaluations make reference to injuries beyond the head abrasions. Plaintiff's claim that his lacerations to the head were caused by Defendants is completely unsupported by record evidence but consistent with an investigator's report that Plaintiff's father repeatedly hit Plaintiff over the head with a cane earlier the same morning in an attempt to prevent him for stealing money from his shirt pocket. *Docket #67*, Exhibit 1.

Defendants Prause and McCarthy's motion for summary judgment should therefore be granted.

### C. The City of Woodhaven

### 1. Municipal Claims

Plaintiff's claims against the City of Woodhaven are construed as allegations of an unconstitutional policy or custom. *Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Under *Monell*, § 1983 liability cannot be imposed on a theory of *respondeat superior*:

"A municipality cannot be held liable *solely* because it employs a tortfeasor - -

or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.*, 436 U.S. at 691. (Emphasis in original).

Instead, a municipality incurs liability only if "action pursuant to official municipal policy of some nature caused a constitutional tort." *Id.*; *Pembaur v. Cincinnati*, 475 U.S. 469, 477, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). In *Johnson v. City of Detroit*, 944 F.Supp. 586, 598 (E.D. Mich. 1996), the Court explained, "The requirement of an official policy distinguishes the acts of the employee from those of the municipality, ensuring that the municipality is held responsible only for the latter."

A municipal policy need not be formal or written to bring § 1983 into play. It can be found in "a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute 'custom or usage' with the force of law.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988)(citations omitted). In addition, § 1983 liability can be based on a policy of inadequate training or supervision, but "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

First, because Defendant Woodhaven Police Department Officer Ames can establish as a matter of law that he was not present at Plaintiff's arrest, there can be neither supervisory nor municipal liability imposed on the Defendant City of Woodhaven for the excessive force claims. Second, Plaintiff's implied claim that City of Woodhaven personnel were deliberately indifferent to his medical needs is contradicted by the record. In fact, Plaintiff

testified that at the time of his arrest, EMS personnel examined him and bandaged his head. *Docket #66*, Exhibit A at pg. 130. Likewise, non-defendant Woodhaven Police Officer Smith's report states that immediately following his arrest, Plaintiff "was evaluated for any injuries at the scene by Monroe Co. Rescue. [Plaintiff] stated he did not need to be treated." *Docket #69*, Exhibit 1 at 11-12. A second medical examination conducted a short time later revealed that Plaintiff, exhibiting "several cuts on the top of his head," did not exhibit or complain of injuries as a result of a police assault, instead reporting that he had "a minor headache." *Docket #67*, Exhibit 2. Plaintiff does not dispute that directly after his second examination, the Taylor Police took custody of him. *Docket #114* at 45 of 50; *Docket #66*, Exhibit A at pg. 131. Plaintiff received another medical evaluation later on the day of his arrest, accompanied by treating notes stating that Plaintiff exhibited "two small circular shaped abrasions," superficial in nature, at the back of his head. *Docket #66*, Exhibits J, K. Plaintiff concedes that a CT scan performed two days later at Heritage Hospital showed normal results. *Docket #114* at 5 of 50. Even assuming at worst that Plaintiff's medical care on the day of his arrest was somehow deficient, he has failed to show the deliberate indifference required to support a constitutional claim. *Westlake*, *supra*, 537 F.2d at 860, n.5.

## 2. Counterclaim

On August 14, 2007, Defendant City of Woodhaven filed a counterclaim for damages to three of its marked police cruisers during the February 21, 2007 chase resulting in

Plaintiff's arrest.  *Docket #38*, Exhibit A.  Defendant argues that in violation of Michigan law, Plaintiff, driving the car stolen from his father, "ignored signals (flashing lights and sirens) of police officers from the City of Taylor, City of Detroit, Michigan State Police, and . . . the City of Woodhaven."  *Id.* (citing M.C.L. 257.602(A)).  Defendant contends that Plaintiff's "failure to stop and comply with the orders of a police officer, and failing to bring his vehicle to stop. . . serves as the basis for the . . . Counterclaim."  *Id.* at 9-10.  Defendant seeks $10,333.21 for the damages sustained by its police cruisers.  *Docket #67* at 9.

Sandra Andrews, Deputy Chief of Police of the Woodhaven Police Department states that "[i]n [Plaintiff's] attempt to avoid apprehension, [he] struck three City of Woodhaven Police Department police vehicles.  *Id.*, Exhibit 4 at ¶¶3-4.  Multiple investigative reports confirm that Plaintiff hit Defendant Woodhaven Police Officer Ames' vehicle during the chase, followed by a collision with two other Woodhaven police vehicles.  *Docket #66*, Exhibits F, G; *Docket #67*, Exhibit 1; *Docket #69*, Exhibit 1.

In response, Plaintiff contends that in his first collision with Woodhaven Police, Defendant Ames sideswiped his car, apparently causing him to ram Ames' car.  *Docket #114* at 9.  Plaintiff, apparently conceding that he struck the other two Woodhaven vehicles, defends his actions by essentially conceding his own wrongdoing; he states that he "was trying to get away and not hurt anyone."  *Id.*  However, Plaintiff's own deposition testimony is most damaging to his position that he is not liable for the damage to the Woodhaven vehicles.  Acknowledging that he knew that law enforcement personnel from various

jurisdictions were pursuing him, Plaintiff testified that "they had, like a roadblock set up for me in Taylor off of – right as you go over the hill, and I figured, oh, I'm not ready to stop yet. You know, I've still got a couple of hits left on the pipe, so I, you know, continued to go on." *Id.* at pgs. 84-85. Plaintiff admitted that he did not intend to stop until consuming all of the crack in his possession, stating that

> "I just finished up the last of the three rocks, and I was going to pull off, you know, give myself up, and that's when . . . the State cop hit me in the back pretty hard to where I lost control, couldn't pull out of it and hit the back of the truck and spun off the road. Then I guess the Woodhaven cop came up and hit me and spun me back the other way."

*Id.* at pgs. 88-89. Although Plaintiff assigns the blame for vehicle damage to either the Woodhaven or Michigan State Police, the cause of the vehicle damage is clearly his own acknowledged failure to obey repeated orders to stop over the course of the pursuit. In the absence of any factual dispute, Defendant City of Woodhaven's motion for summary judgment on the counterclaim for $10,333.21 should be granted.[8]

## IV. CONCLUSION

For these reasons, I recommend the following:

    1. Defendants Taylor Police Department's (City of Taylor's), Gina Masterson's,

---

[8] While the Plaintiff argues against liability, he has neither challenged nor provided any evidence to contradict the claimed amount of monetary damages to the police car. In addition, the fact that he may be subject to an order of restitution as part of his criminal sentence does not preclude a separate civil judgment, which would give the Defendant/Counter-Plaintiff an individual and independent mechanism for enforcement.

Keith O'Conner's, Anthony Neal's, Nicolas Hill's, Timothy Culp's and Michael Neidy's motion for summary judgment [Docket #66] should be GRANTED.

2. Timothy Ames' and Woodhaven Police Department's motion for summary judgment [Docket #67] should be GRANTED.

3. The City of Woodhaven's motion for summary judgment on its counter-claim for $10,333.21 [Docket #67] should be GRANTED.

4. Dennis McCarthy's and Robert Prause's motion for summary judgment [Docket #69 and #78] should be GRANTED.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages

in length unless by motion and order such page limit is extended by the court. The response

shall address specifically, and in the same order raised, each issue contained within the

objections.


S/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: August 6, 2008

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys
and/or parties of record by electronic means or U.S. Mail on August 6, 2008.


S/G. Wilson
Judicial Assistant